### William McNeilly, Appellee, v. N. O. Nelson Manufacturing Company, Appellant.

1. CONTRIBUTORY NEGLIGENCE—*when servant guilty of.* A servant is guilty of contributory negligence if he disregards safe means of doing the work at which he is engaged.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1907. Reversed with finding of fact. Opinion filed March 18, 1908.

C. H. BURTON, for appellant.

BROWN & GEERS, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee recovered a judgment of $1,300 against appellant in the Circuit Court of Madison county for

personal injuries incurred by him while in appellant's employ, on February 1, 1905. The facts on which appellee based his right to recover, as disclosed by the record, are substantially as follows:

Appellant has for some years been engaged in operating a manufacturing plant at Le Claire, a suburb of Edwardsville, Illinois, where appellee had been employed for twelve or thirteen years as a woodworker. For the last three years prior to his injury he had worked in what was known as the cabinet mill where he was accustomed to run several different machines, used for preparing material and manufacturing articles out of wood, among which was a pony planer which he was operating at the time he was injured. This pony planer was a machine for planing smooth boards, was about three feet wide and had a table or feed bed through the center. Across the feed bed was a cylinder on which were fixed three planing knives some thirty inches long and when the machine was running the cylinder revolved at the rate of 3,600 revolutions a minute. In front of the knives and about four inches from them were in-feed rollers between which the lumber passed on its way over the feed bed to the knives, where it was cut and planed down. The feed rollers were about four inches in diameter and the upper one was corrugated so as to grip the lumber and push it towards the knives. Between these rollers and the knives was a straight edged piece of iron or steel which pressed down on the lumber close to and parallel with the knives, called a chip breaker, the office of which was to prevent the lumber from splintering as it was struck and cut by the knives. After the lumber passed between these rollers and the knives, it again passed between two rollers called the out-feed rollers which continued it in motion until it was carried entirely through the machine. The boards were inserted in the machine from the front by hand. The feed table over which the lumber passed could be easily lowered or raised

to accommodate the planer to the size of the timber to be planed, by turning a wheel at the left of the machine. It had a guage and could be set to plane timber from a quarter of an inch or less to six inches in thickness. On the left of the planer also and within reach of the operator was a lever, by moving which he could stop or start the feed rollers as desired. At the right of the machine within easy reach was a lever, which came up through the floor below, called a shifter, by moving which the belt which ran the planer could be shifted from one pulley to another so as to start or stop the machine. This lever came up through a narrow slit in the floor and, it was claimed by appellee, was out of repair so that when set to shift the belt on a tight pulley and put the machine in motion, it would fly back to its former position, thus stopping the machine. This defect in the lever made it necessary for the operator to place a wedge behind it in the slit to prevent it from flying back. When the machine was started the operator would place the wedge in the slit in the floor behind the shifter and when it was desired to stop the machine the operator would have to first take out the wedge and then push the shifter over. Over the top of the knives was a metal hood connecting above with a funnel through which a blast was forced, intended to carry away the shavings, chips and dust caused by the operation of the machine. It is claimed that when the blower was in proper repair it would carry up a knot weighing four or five ounces but that at the time of the injury it was out of repair.

On the day of the injury appellee was running short boards through the planer. He had the knives and rollers set by adjusting the feed bed to plane them down to about ¾ of an inch. He pulled the shifting lever over so as to throw the belt on the tight pulley and wedged it so that it could not go back. While he was at work a knot from one of the boards dropped in behind the front or in-feed rollers and he reached

between them with his left hand to remove it. His hand was at once caught by the rollers, the upper one of which was corrugated, and pulled or fed into the machine, under the chip breaker, and mashed and bruised so as seriously to and permanently injure it before the machine could be stopped by another employe who came to his assistance. He says he tried to stop the machine himself by throwing the shifter over but could not do so on account of the wedge behind it.

Appellee asserts in his declaration that appellant was guilty of negligence in suffering the shifter and the blower to become and remain out of order; that he notified the foreman the machine was out of repair and the latter promised to repair the same but failed to do so, and that within twenty-four hours after such notice appellee was injured. The theory of appellee is that had the blower been in repair the knot which he was striving to reach when he was injured would not have dropped behind the rollers but would have been carried away, and had the shifting lever been in order so that it was not required to be wedged he could have thrown it back with his right hand after his left was caught between the rollers.

Appellant urges a number of reasons why the judgment should not be permitted to stand, several of which appear to us to be well founded. As, however, the judgment must be reversed upon the facts it is not necessary for us to consider any other reason for reversal than that the verdict was not supported by the evidence. Appellee claims and cites authorities to sustain his position that it is the duty of the master to use reasonable care to provide reasonably safe appliances for the use of his servants; that he should use reasonable care to provide a reasonably safe place for his servants to work; that after notice to the master of a defect in the machinery and a promise to repair, the burden of the added risk from the defect, shifts to and remains with the master for a reasonable length of time, required to make the repairs.

The fault of appellee's position is that the evidence did not show he was injured by reason of defective machinery or an unsafe place in which to work. Appellee's natural and proper place at the machine was entirely safe and so long as he operated it with ordinary care for his own safety, he was not subject to injury.

It appeared from the evidence that after the knot fell in behind the rollers there were four ways open and known to appellee, by which he could have removed it with safety to himself. One was to stop the machine entirely by using the shift lever at the right. Another to stop the feed rollers by moving the lever on the left side of the machine. Still another to remove the knot with a stick or piece of wood which he could have obtained a short distance away, and the last, to have lowered the bed of the machine so as to separate the feed rollers six inches, by turning the wheel at the left. Disregarding these safe means however, appellee recklessly put his fingers between the rollers to remove the knot and his hand was caught and injured. Appellee was entirely familiar with the machine and its dangers and testified that he knew if his hand was thick enough to fill the place between the rollers, it would be fed into the machine and also that he knew if his hand was caught in the rollers, it would get hurt. But even if he had not been as familiar with the machine as he was, ordinary prudence must have suggested that it would be dangerous for him to attempt to insert his fingers between the two moving rollers, only some three-fourths of an inch apart, with a cylinder behind them bearing knives and revolving 3,600 times a minute. Appellee's own testimony shows that the act was done with such reckless disregard of care and caution for his own safety that he should not be permitted to recover damages from appellant for the injuries sustained.

The judgment of the court below will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment of the court: We find that at the time of and just prior to the occurrence of the injury complained of, appellee was not in the exercise of ordinary care for his own safety; and that his injuries were brought about by his own negligence.